IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re ENRON CORPORATION SECURITIES LITIGATION | § | MDL 1446 |
| MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated, *Plaintiffs,* vs. ENRON CORP, et al. *Defendants.* | § | CIVIL ACTION NO H-01-3624 |
| KEVIN LAMPKIN, et al., Individually and On Behalf of All Others Similarly Situated, *Plaintiffs,* VS. UBS FINANCIAL SERVICES, INC., et al., *Defendants.* | § | CIVIL ACTION NO. H-02-0851 |
| SAMUEL GIANCARLO, et al. Individually and on Behalf of All Others Similarly Situated, *Plaintiffs,* VS. UBS FINANCIAL SERVICES, INC., et al., *Defendants.* | § | CIVIL ACTION NO. 03-CV-4359 |

PLAINTIFFS' JOINT NOTICE OF DISPUTE AND MOTION FOR DETERMINATION REGARDING THE COURT'S STAY ORDER (*Newby* # 5638)

COME NOW KEVIN LAMPKIN, JANICE SCHUETTE, ROBERT FERRELL, STEVEN MILLER, DIANNE SWIBER, TERRY NELSON, JOE BROWN, FRANKLIN GITTESS, SAMUEL GIANCARLO, and CARLOS ALSINA, Plaintiffs in the two above-referenced putative class actions (collectively "Plaintiffs") and hereby notify the Court pursuant to the Notice to All Parties in All Pending Enron Tagalong and Coordinated Cases (Newby # 5636) that a "dispute" exists between the Plaintiffs and the Defendants ("UBS") as to the applicability to these cases of this Court's March 20, 2007 stay Order (Newby # 5638). Plaintiffs request a determination that the Court's stay Order does not apply to their Section 10(b) causes of action. *See "Exhibit A," "Exhibit B,"* and *"Exhibit C"* attached hereto for additional background of the dispute.

In these cases, Plaintiffs assert a primary violation and the presumption of class-wide reliance based on allegations of nondisclosure in the face of a duty to disclose arising from a direct financial advisor/client relationship between UBS and the Plaintiffs. *See, e.g.*, Plaintiffs' Third Amended Class Action Complaint (Lampkin #122) at ¶¶ 25, 42-44, 52, 116-118, 188-190; *see also*, Plaintiffs' First Amended Class Action Complaint (Giancarlo # 81) at ¶¶ 20, 42-44,52,116-118,188-190. Plaintiffs' complaints catalog substantial direct and circumstantial evidence to show UBS both knew of and understood the effects of Enron's financial manipulations, yet UBS failed to disclose this activity to Plaintiffs at the time they purchased Enron securities during the class period (or otherwise act in accordance with its own and industry standards with regard to such inside information to restrict transactions, recommendations, and research in the relevant securities). In both cases Plaintiffs expressly disclaim any type of "general duty" theory of liability arising out of UBS's participation in the Enron transactions detailed in the complaints. *See "Exhibit A"* at p. 2. Instead, Plaintiffs rely on the duties imposed on UBS under the industry's self-regulatory system as the source of the duty of disclosure Plaintiffs allege UBS breached in connection with Plaintiffs' purchases of Enron equity or debt securities. *See id.* The putative class members for the Section

10(b) claims in these cases consist only of UBS's retail brokerage clients, a large majority of whom were also Enron employees directed to UBS through UBS's exclusive handling of Enron's employee stock option plans. In response to a request for clarification on the March 20, 2007 status conference call regarding the announced stay, the Court indicated under the different circumstances of these cases, where a specific duty of disclosure is alleged based on a brokerage relationship, there would be no need for a stay. *See "Exhibit D"* at pp.14-15.

Predictably, UBS claims that the Court's stay Order should apply to these cases. *See "Exhibit C."* Yet, tellingly, UBS's written definition of the actual dispute serves to demonstrate Plaintiffs' point clearly; i.e., that the theory of Section 10(b) liability in these cases is an issue of primary liability and does not involve the same secondary actor liability issue involved in the *Newby* appeal. UBS's March 29, 2007 correspondence agrees with Plaintiffs' position by identifying the central issues of primary liability in these cases as: (i) can a nondisclosure in the face of a regulatory duty of disclosure arising from a retail brokerage/customer relationship constitute a primary violation of Section 10(b); and (ii) are the UBS defendants, as they admit in their SEC filings and marketing materials, a single integrated business enterprise.[1] *See "Exhibit C"* at p. 2. These issues are fully briefed and ripe for consideration by the Court in connection with UBS's pending motions to dismiss in these cases.

Plaintiffs respectfully request the Court review the relevant materials and confirm that the Court's stay Order (*Newby* # 5638) <u>does not</u> apply to these cases. As the Court stated in the status conference regarding cases not involving a *Newby* general duty to the market theory, "obviously . . . there would be no need for a stay." *See "Exhibit C"* at p. 15. Plaintiffs' claims have been pending

---

[1]UBS identified on a conference call a Supreme Court decision limiting the necessary duty of disclosure for a Section 10(b) claim only to a fiduciary relationship *as a possible means* by which the *Newby* appeal could affect these cases. Plaintiffs do not believe this issue has even been presented in the *Newby* matter and thus UBS's hope that the Supreme Court will *sua sponte* reverse decades of law on this issue is not a reasonable basis for delaying these cases.

for five years. With extremely limited exceptions that the parties were attempting to resolve prior to the Court's stay Order, both fact and expert discovery are complete. Plaintiffs stand ready to proceed with class certification, motions for summary judgment, and ultimately a trial on the merits of their claims. Plaintiffs have always maintained their independence from *Newby's* general duty theory, as demonstrated by their suing only UBS and, for the *Lampkin* plaintiffs, prior to the inclusion of bank defendants in *Newby* under such a theory. Their complaints concern UBS's own fraud in the direct financial advisor/client relationship, which manifested itself through the purchases of Enron securities in UBS accounts. Plaintiffs' claims do not in any way depend on UBS's intent to participate in a conspiracy to assist Enron in the improper manipulation of its financial appearance.

To further the important interest of judicial economy, Plaintiffs have patiently and without protest waited in the long shadow of *Newby*. However, given both the Fifth Circuit's virtual affirmation of the basis of Plaintiffs' Section 10(b) claims and the stay of activity in *Newby*, Plaintiffs believe the time has come for their claims to proceed independently of *Newby*. The eyes of the nation certainly remain on the civil justice system to see if it is up to the challenge of giving parties their day in court. These Plaintiffs have already waited five years for their day and, should the Court agree with their position regarding the stay, remain hopeful that their day may come this year.

Attached hereto as "Exhibit E" and "Exhibit F" is the information requested by the Court pursuant to the Notice to All Parties in All Pending Enron Tagalong and Coordinated Cases (Newby # 5636) regarding motions pending in these matters.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request a determination by the Court that the Court's stay Order does not apply to their Section 10(b) causes of action.

April 2, 2007
Date

Andy Tindel
ANDY TINDEL
State Bar No. 20054500
Southern Dist. Bar No. 8015
PROVOST UMPHREY LAW FIRM, LLP
112 E. Line Street, Ste. 304
Tyler, TX 75702
(903) 596-0900 Telephone
(903) 595-0909 Facsimile

**ATTORNEYS FOR PLAINTIFFS KEVIN LAMPKIN, JANICE SCHUETTE, ROBERT FERRELL, and STEPHEN MILLER, Individually and on Behalf of all Others Similarly Situated**

April 2, 2007
Date

Dawn Meade
DAWN MEADE
State Bar No. 13879750
Southern Dist. Bar No. 15180
SPENCER & ASSOCIATES, P.C.
4635 S.W. Freeway, Suite 900
Houston, TX 77027
Tel: 713-961-7770
Fax: 713-961-5336
Email: dawnmeade@spencer-law.com

**ATTORNEY FOR PLAINTIFFS, SAMUEL GIANCARLO AND CARLOS ALSINA, Individually and on Behalf of all Others Similarly Situated**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2007, a true and correct copy of the foregoing JOINT NOTICE OF DISPUTE AND MOTION FOR DETERMINATION REGARDING THE COURT'S STAY ORDER (DOCKET # 5638) was served upon all counsel of record on the Service List by posting to *www.esl3624.com* in compliance with the Court's Order regarding Service of Papers and Notice of Hearings Via Independent Website.

David L. Augustus

# Exhibit A

**SPENCER & ASSOCIATES, P.C.**
*Attorneys and Counselors at Law*
Executive Plaza West
4635 Southwest Freeway, Suite 900
Houston, Texas 77027
Telephone (713) 961-7770
Facsimile (713) 961-5336
Toll Free (888) 237-4LAW
E-Mail: davidaugustus@spencer-law.com
Website: http://www.spencer-law.com

*Attorneys*

*Bonnie E. Spencer*
*Dawn R. Meade*
*Joseph J. Hroch*
*David L. Augustus*
*Erich L. Schenk*

*Assistants*

*Licea D. Sims (Paralegal)*
*Louren R. Yzaguirre (Paralegal)*
*Cathy M. Easterly (Accounting)*
*Regina S. Carter (Legal Assistant)*
*Sharee N. McCown (File Clerk)*

March 22, 2007

Mr. Richard Lomuscio
Sullivan & Cromwell, LLP
125 Broad Street
New York, NY 10004-2498

***Via Facsimile (212) 558-3588***
***& Via E-Mail***

Re: Cause No. H-02-0851; ***Kevin Lampkin, et al. v. UBS Painewebber, Inc. et al.***; In the United States District Court, Houston Division.

Re: Cause No. H-03-4359; ***Samuel Giancarlo, Individually and on Behalf of All Others Similarly Situated v. UBS Financial Services, Inc. UBS Securities, L.L.C. and UBS AG***; In the United States District Court for the Southern District of Texas, Houston Division

Dear Mr. Lomuscio:

I am surprised not to have received by now confirmation from UBS that the Fifth Circuit's ruling does not affect the theory of Section 10(b) liability in these cases. I understand from your conversation with Dawn Meade that UBS began considering its position on Tuesday. Based upon the allegations in these cases, which determine the answer to this question, there is no room for a good faith dispute.

There can be no legitimate question that, unlike the *Newby* plaintiffs, Plaintiffs in these cases assert a primary violation of Section 10(b) based on allegations of nondisclosure in the face of a duty to disclose arising from a direct broker/client relationship between UBS and the Plaintiffs. *See, e.g.*, Plaintiffs' Third Amended Class Action Complaint (Lampkin #122) at ¶¶ 25, 42-44, 52, 116-118, 188-190; *see also*, Plaintiffs' First Amended Class Action Complaint (Giancarlo #81) at ¶¶ 20, 42-44, 52, 116-118, 188-190. This, coupled with allegations of integrated operations between all UBS defendants, is the distinguishing characteristic of the fraud claims in these cases. In fact, Plaintiffs in these cases go so far as to expressly disclaim in their complaints any reliance on UBS's participation in the transactions detailed in the complaints as the source of its alleged duty to Plaintiffs, which is the fundamental issue addressed in the Fifth Circuit's decision. For example, both complaints, which were filed in August, 2006, long before this issue was presented to the Fifth Circuit for consideration, state:

---

- "Through the acquisition of PW's retail brokerage business, UBS assumed concrete duties of disclosure to a specific class of investors -- its retail client" (Complaints at ¶ 42);

- "It is critical to remember the role of these transactions in the context of Plaintiffs' claim under Section 10(b) . . . Plaintiffs' securities fraud claim relies upon UBS's knowledge of Enron's financial manipulations and the associated risks (acquired from UBS's active participation in the manipulations in order to progress UBS's purpose of maximizing its Enron-derived income at the expense and in conflict with its retail clients), UBS's duty to disclose this knowledge to its retail clients, and UBS's failure to disclose this knowledge to its retail clients . . . **The transactions discussed [in the complaints] specifically relate to [whether UBS possessed material information regarding Enron's financial situation during the 1934 Act Class Period], not whether UBS's involvement in a particular transaction by itself constitutes a primary violation of Rule 10b-5**" (Complaints at ¶¶ 117-118) (Emphasis Added);

- "In the context of Section 10(b), the Supreme Court specifically categorizes the nondisclosure of material information in violation of a duty to disclose as a 'deceptive' act prohibited by Section 10(b) . . . if UBS possessed material information regarding Enron's financial situation that it failed to disclose to its retail clients, then UBS committed a primary violation of Rule 10b-5" (Complaints at ¶ 118);

- "UBS owed Plaintiffs a duty of disclosure. It wholly failed to disclose to Plaintiffs material information within its knowledge" (Complaints at ¶ 188);

Plaintiffs' responses to UBS's motions to dismiss in these cases, again filed months before the Fifth Circuit considered the issue presented in the *Newby* appeal, reiterate the Plaintiffs' theory of fraud liability:

- "The specific nonrepresentational, deceptive act about which Plaintiffs complain is UBS's continuous failure to disclose to its retail clients, to whom UBS owed concrete duties of disclosure, its institutional knowledge that Enron's public financial appearance was unreliable and materially misleading";

- "Plaintiffs' contractual privity with UBS, UBS's regulatory duties to Plaintiffs, and Plaintiffs' ability to prove UBS's institutional knowledge of material, non-public information regarding Enron's false financial appearance during the class period distinguishes this case form the multitude of claims filed in the wake of Enron's demise"; and

---

- "Whereas in cases such as *Newby* the theory of liability centers around allegations that certain financial institutions worked hand-in-hand with Enron to create a false financial appearance, *this* case centers around the fact that UBS knew Enron's public financial appearance was false (in large part because of its hand-in-hand work with Enron to create a false financial appearance) and yet failed to disclose it to the Plaintiffs, or otherwise act in accordance with its own established guidelines to suspend analyst coverage and restrict sales".

Plaintiffs specifically disavow in these complaints any reliance on a theory of liability similar to the *Newby* theory rejected by the Fifth Circuit. UBS does not have to agree with these allegations to confirm their existence and the function they serve with regard to Plaintiffs' claims. Any current attempt to deny either is completely frivolous, especially in light of the following UBS statements recognizing the true nature of the Plaintiffs' claims:

- "Plaintiffs' claim appears to go something like this: Warburg bankers knew some vague nonpublic information about Enron's true financial condition. Driven by a desire to curry favor with Enron, Warburg wrongfully failed to share that nonpublic information with either Ron Barone (who published research based only on public information) or PaineWebber brokers (who did not share this nonpublic information with PaineWebber customers, so those customers could trade on that information)";

- "Plaintiffs contend that their claims are unique in that they somehow involve PaineWebber and the relationships between class members and PaineWebber brokers";

- If, as Plaintiffs appear to believe, what was or was not communicated to individual putative class members by individual PaineWebber brokers is what makes these cases unique, then it is obvious that the proposed classes cannot be certified"; and

- "If UBS had done what Plaintiffs contend it was obligated to do – reveal negative inside information about Enron to the market . . ."

While Plaintiffs' disagree with the litigation spin UBS attempts to put on Plaintiffs' claims in the foregoing statements, the statements serve to confirm UBS's subjective understanding of the fact that Plaintiffs's claims rely on a duty of disclosure arising from a direct broker/client relationship between UBS and the Plaintiffs. As such, Plaintiffs will continue to move forward in this matter with the understanding that no dispute exists and the *Newby* stay does not apply to these cases.

---

If you have any questions regarding this matter, please feel free to contact me to discuss them.

Very truly yours,

SPENCER & ASSOCIATES, P.C.

David L. Augustus

CC: *Via Facsimile (650) 461-5700*
*& Via E-Mail*
Mr. Brendan P. Cullen
Sullivan & Cromwell, LLP
1870 Embarcadero Road
Palo Alto, California 94303-3308

*Via E-mail*
Team

# Exhibit B

**SPENCER & ASSOCIATES, P.C.**
*Attorneys and Counselors at Law*
Executive Plaza West
4635 Southwest Freeway, Suite 900
Houston, Texas 77027
Telephone (713) 961-7770
Facsimile (713) 961-5336
Toll Free (888) 237-4LAW
E-Mail: davidaugustus@spencer-law.com
Website: http://www.spencer-law.com

*Attorneys*

*Bonnie E. Spencer*
*Dawn R. Meade*
*Joseph J. Hroch*
*David L. Augustus*
*Erich L. Schenk*

*Assistants*

*Licea D. Sims (Paralegal)*
*Louren R. Yzaguirre (Paralegal)*
*Cathy M. Easterly (Accounting)*
*Regina S. Carter (Legal Assistant)*
*Sharee N. McCown (File Clerk)*

March 28, 2007

Mr. Brendan P. Cullen
Sullivan & Cromwell, LLP
1870 Embarcadero Road
Palo Alto, California 94303-3308

***Via Facsimile (650) 461-5700***

Re: Cause No. H-02-0851; ***Kevin Lampkin, et al. v. UBS Painewebber, Inc. et al.***; In the United States District Court, Houston Division.

Re: Cause No. H-03-4359; ***Samuel Giancarlo, et al. v. UBS Financial Services, Inc., et al.***; In the United States District Court for the Southern District of Texas, Houston Division

Dear Mr. Cullen:

I write to confirm the matters discussed yesterday on our "meet and confer" call regarding our clients' positions with respect to the Fifth Circuit's recent ruling concerning the class certification order in *Newby* and the Court's stay order (Document No. 5638) in connection thereto. Prior to the conference, we made UBS aware of the Plaintiffs' position that the Court's stay order does not apply to the above-referenced cases because, unlike the issues on appeal in *Newby*, these cases assert a primary violation of Section 10(b) by UBS based on allegations of nondisclosure in the face of a specific duty to disclose arising from a direct broker/client relationship between UBS and the Plaintiffs.

In our conference, you informed us that UBS takes the position that the Court's stay order does apply to these cases based on UBS's belief that, as part of an appeal of the *Newby* matter, the possibility exists for the Supreme Court to rule that only fiduciaries have a duty of disclosure in the context of a securities fraud claim under Section 10(b). In other words, even though the Fifth Circuit recognized in its opinion that the banks were not fiduciaries "and were not otherwise obligated to the plaintiffs," and even though UBS confirms its recognition of the regulatory duties imposed on it through NASD rules, UBS still seeks to stay this action in the hope that the Supreme Court will change the existing law in this and every other circuit that has addressed this issue.

---

UBS's position is confusing given that the very issue UBS points to as the reason these cases should be stayed pending the *Newby* appeal has not even been framed as an issue for appeal. The subject class certification order expressly recognizes the absence of a duty to disclose by the *Newby* bank defendants under the circumstances of that case. Further, all of the legal authority on the issue of when a duty to disclose can arise is in agreement. These cases all recognize that such a duty can arise from circumstances other than a fiduciary relationship, such as when, for example, a regulatory provision mandates disclosure. Without any controversy in the law on the issue to which UBS points as the basis for its position, why UBS believes these cases should be stayed pending a decision unrelated to this issue is simply incomprehensible.

As I stated in our conference, I believe it is important when presenting the "dispute" to the Court for consideration that the parties clearly understand the nature and parameters of the "dispute." Despite my requests, UBS would not define its position in writing. Thus, the purpose of my communication is to confirm my understanding of UBS's position based on our discussions. If you feel that I have misstated UBS's position, please feel free to correct me.

Very truly yours,

SPENCER & ASSOCIATES, P.C.

David L. Augustus

CC: ***Via Facsimile (212) 558-3588 & Via E-Mail***
Mr. Richard Lomuscio
Sullivan & Cromwell, LLP
125 Broad Street
New York, NY 10004-2498

***Via E-mail***
Team

# Exhibit C

SULLIVAN & CROMWELL LLP

TELEPHONE: 1-650-461-5600
FACSIMILE: 1-650-461-5700
WWW.SULLCROM.COM

1870 Embarcadero Road
Palo Alto, California 94303-3308

LOS ANGELES • NEW YORK • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

March 29, 2007

By Facsimile

David Augustus, Esq.,
Spencer & Associates, P.C.,
4635 Southwest Freeway, Suite 900,
Houston, Texas 77027.

Re: *Lampkin* v. *UBS PaineWebber, Inc.*, Civil Action No. H-02-851
*Giancarlo* v. *UBS Financial Services Inc.*, Civil Action No. H-03-4359

Dear David:

I write on behalf of UBS Financial Services, Inc. ("PaineWebber"), UBS Securities LLC ("Warburg"), and UBS AG, defendants in the above-captioned actions, in response to your letter of March 28, 2007 regarding our "meet and confer" call concerning the Court's recent stay order (*Newby* # 5638).

During our call, I explained to you defendants' position that the stay order applies to these cases and plainly set forth the simple reasons for that position, which your letter almost totally misstates. Since I thought our positions were well understood, a written statement of those views in addition to and in advance of briefing to the Court seemed wasteful. But, to set the record straight, I will reiterate the key points I made on the call, with the understanding that this does not reflect all of the arguments and authorities defendants may rely on in briefing this matter to the Court.

Only two months ago the Court granted (*Lampkin* # 181; *Giancarlo* # 138), plaintiffs' and defendants' Agreed Motion asking the Court to reset the class certification briefing schedule to "commence after the Fifth Circuit issues its ruling" on the Rule 23(f) appeal in *Newby* (*Lampkin* # 180; *Giancarlo* # 136). The parties explained that they expected that the Fifth Circuit's "opinion may clarify or change the law governing class certification" in ways relevant to these cases and sought relief to avoid the "wasteful duplication" of filing "briefs that relied on outmoded precedents" and the

later filing of "supplemental briefs dealing with the Fifth Circuit's decision." (*Lampkin* # 180; *Giancarlo* # 136.)

The Fifth Circuit addressed the very issues it was expected to consider and its opinion is now the leading case in this circuit on, *inter alia*, the scope of primary § 10(b) liability for secondary actors, the necessity of a plaintiff showing a duty to disclose owed to class members to certify a § 10(b) class, and the availability of the *Affiliated Ute* presumption of reliance. Far from hoping for some change in the law, defendants will rely on the Fifth Circuit's opinion as one of their multiple independent bases to dismiss the complaints and defeat class certification.[1] I expect that plaintiffs would rely heavily on any ruling overturning this opinion on appeal. (I mentioned fiduciary duties only as an example of how one possible outcome of the appeal could impact this case.) Continued litigation of these cases would be heavily dependant on the outcome of the expected appeal and the Court's recent stay order is plainly intended to prevent exactly the same sort of wasteful briefing that was avoided by the earlier agreed adjustment to the briefing schedule.

Plaintiffs' view that the stay order does not apply because of an alleged duty to disclose flowing from a retail brokerage/customer relationship not present in *Newby* is not plausible in face of the expansive wording of the Court's order.[2] The Court broadly stayed all actions involving "claims under § 10(b) *relating to* primary v. aiding and abetting liability of secondary actors" (*Newby* # 5638 (emphasis added)), not all actions with some specific degree of similarity to *Newby*. These cases clearly "relate to" "primary v. aiding and abetting liability" because, far from "confirm[ing] [their] recognition of the regulatory duties imposed on [them] through NASD rules" — whatever that means — defendants contest both the existence and scope of any actionable duty to disclose owed to plaintiffs. (*See Lampkin* # 126; *Giancarlo* # 84.) Plaintiffs' view simply presumes what is disputed here: that a retail brokerage/customer relationship involves an actionable duty to disclose and that said duty would also flow from defendants Warburg and UBS AG, neither of which had any brokerage relationship with any plaintiff.

---

[1] Defendants' motions to dismiss are fully briefed. When the stay is lifted defendants expect that they will file a supplemental submission addressing the impact of the Fifth Circuit's ruling and any appellate review thereof.

[2] During the meet and confer plaintiffs relied on a purported statement by the Court during a recent teleconference hearing to interpret the plain terms of the Court's stay order. Plaintiffs agreed to provide defendants with a transcript of this teleconference when it becomes available, and we appreciate that courtesy.

Moreover, while I did not address this in our call, these cases would be stayed even if the Court's order were premised upon some degree of factual similarity between this case and the *Newby* appeal, as plaintiffs here are suing an investment bank, Warburg, for a failure to disclose information obtained in an investment-banking relationship — one of the precise issues under appeal in *Newby*.

In light of the foregoing, it is difficult for us to imagine that Judge Harmon would not conclude that her order stayed these cases. As always, our preference is to avoid needless submissions to her, so if you change your minds about the effect of the stay, please let us know. And, as always, if you have any questions or concerns, please don't hesitate to contact me.

Sincerely,

Brendan P. Cullen

cc: Andy Tindel, Esq.
(Provost * Umphrey Law Firm, L.L.P.)

Thomas Hunt, Esq.
(Thomas L. Hunt & Associates, P.C.)

Dawn Meade, Esq.
(Spencer & Associates, P.C.)

Steven Stewart, Esq.
(Levin & Kasner, P.C.)

# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK NEWBY, et al | * | Civil No. H-01-3624 |
| | * | (Consolidated) |
| VERSUS | * | Houston, Texas |
| | * | March 20, 2007 |
| ENRON CORPORATION, et al | * | 11:05 a.m. |

***

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY | * |
| OF CALIFORNIA, et al | * |
| | * |
| VERSUS | * |
| | * |
| KENNETH L. LAY, et al | * |

TELEPHONE STATUS HEARING
BEFORE THE HONORABLE MELINDA HARMON
UNITED STATES DISTRICT JUDGE

Appearances:

For Mark Newby, et al:

Mr. Patrick Coughlin
Mr. Roger Greenberg

For Plaintiffs in Lampkin vs. UBS:

Mr. David Augustus

Proceedings recorded by mechanical stenography, produced by computer-aided transcription.

Appearances:

For Plaintiffs:

Mr. Tom Bilek

For Barclays:

Mr. Barry Abrams
Mr. David Braff

For Former Outside Directors:

Ms. Kathy Patrick

For Jeffrey Skilling:

Mr. Jeffrey Barker

For Credit Suisse First Boston:

Mr. Richard Clary
Mr. Odean Volker

For Merrill Lynch:

Mr. David Beck
Mr. Adam Hakki
Mr. Herb Washer

For Toronto Dominion:

Mr. Patrick Buckler

Appearances:

For Arthur Andersen:

Mr. Chuck Cox
Mr. Miles Ruthberg

For Scott Yeager:

Mr. Tony Canales

For Joseph Hirko:

Mr. Barnes Ellis

For David Duncan:

Mr. Barry Flynn

For Fiduciary Counselors, Inc.:

Mr. Avi Garbow

For Estate of Kenneth Lay:

Mr. George Gibson

For Connecticut Resources Recovery Authority:

Mr. Richard Goldstein

For Citibank

Mr. Jonathan Hurwitz
Mr. Umair Muhajir

For Mark Koenig

Mr. Philip Inglima

Appearances:

For Lou Pai:

Ms. Deborah Jeffrey
Mr. Logan Smith
Mr. Roger Zuckerman

For Bank of America:

Mr. Chuck King

For McMahon, Whalley & Buy:

Mr. Tom Kirkendall

For Richard Causey:

Mr. Bob Mace

For Avenue Capital Management:

Ms. Kimberly McMullan

For Royal Bank of Canada:

Mr. Michael McNamara
Mr. Claude Stuart

For American National, Westboro & Ravenswood:

Mr. Andrew Mytelka
Mr. Steve Windsor

For Royal Bank of Scotland:

Mr. John Newman

Appearances:

For Andrew Fastow:

Mr. Craig Smyser
Mr. Jutsin Waggoner

For Silvercreek Plaintiffs:

Mr. Steve Williams

Court Reporter:

Fred Warner
515 Rusk Avenue
Houston, Texas 77002

THE COURT: Hello. This is Judge Harmon.

MR. COUGHLIN: Good Morning, Your Honor.

THE COURT: Could you all tell me who you are.

MR. COUGHLIN: Good morning, Your Honor. Patrick Coughlin on behalf of the regents and the class.

MR. CLARY: Your Honor, it's Richard Clary on behalf of the First Boston defendants.

MR. BECK: Your Honor, David Beck, Herb Washer and Adam Hakki for Merrill Lynch.

MR. VOLKER: Odean Volker defendants.

MR. BRAFF: David Braff for Barclays.

MR. ABRAMS: Barry Abrams for Barclays.

MR. RUTHBERG: Miles Ruthberg and Chuck Cox for Arthur Andersen.

MR. FLYNN: Barry Flynn for David Duncan.

MR. SMYSER: Craig Smyser for Andrew Fastow.

MR. ELLIS: Barnes Ellis for Joseph Hirko.

MR. BARKER: Jeff Barker for Mr. Skilling.

MR. INGLIMA: Philip Inglima for Mark Koenig.

MR. ZUCKERMAN: Roger Zuckerman, Logan Smith and Debbie Jeffrey, Your Honor, for Lou Pai.

MS. PATRICK: Kathy Patrick for outside directors, Your Honor.

MR. CANALES: Tony Canales for Scott Yeager.

MR. MACE: Bob Mace for Richard Causey.

MR. KIRKENDALL: Tom Kirkendall for Messrs. McMahon, Buy & Whalley.

MR. GIBSON: George Gibson for the estate of Kenneth Lay.

MR. MTELKA: Andy Mytelka and Steve Windsor for the ANACO plaintiffs.

MR. GREENBERG: Roger Greenberg for the Regents and as liaison counsel.

MR. NEWMAN: Jack Newman for the Royal Bank of Scotland.

MR. McNAMARA: Michael McNamara and Claude Stuart for the Royal Bank of Canada.

MR. BILEK: Tom Billek for the Regents.

MR. BUCKLER: Patrick Buckler for Toronto Dominion.

MR. WILLIAMS: Steve Williams for the Silvercreek plaintiffs.

MS. McMULLAN: Kimberby McMullan for the Avenue Capital plaintiffs.

MR. GARBOW: Avi Garbow for Fiduciary Counselors, Inc.

THE COURT: Is that it?

(No Response)

THE COURT: Mr. Coughlin.

MR. COUGHLIN: Yes, Your Honor.

THE COURT: In the wake of the opinion yesterday

issued by the Fifth Circuit, what is your pleasure? What would you think we ought to do?

MR. COUGHLIN: Your Honor, we have notice out on the class, which I think is fine, they can contact -- the issues we have to deal with, of course, are either the jurors we sent the questionnaire to, the notice to the class, and the outstanding subpoenas and then what we do with the pretrial order and dates and things like that. I guess I would leave it up to the Court, of course, how to deal with the jurors.

The notice to the class I think is fine. We are supposed to publish that. They have gone out in April, and they have got a number on there they can call and see what's going on.

Right now we are deciding, considering our options of seeking further review in the Fifth Circuit or asking the Supreme Court for cert. The Supreme Court currently has in conference this issue with the Homestore Ninth Circuit opinion, and the Eighth Circuit opinion is in conference this Friday; and so, that's one of the thing we are thinking.

I guess what that means for this case, Your Honor, is I think that everything should be put on hold, that no further compliance with the pretrial order, things like that should be undertaken at this time; and that would also go for the other cases, the RBC and the Toronto Dominion

and RBS cases as well as the Goldman case.

So, I guess our, I wouldn't say it's our pleasure, but our request, I guess, would be to put everything on hold as we seek review either in the Fifth or with the Supreme Court.

THE COURT: All right.

Any other ideas?

MR. CLARY: Your Honor, this is Mr. Clary for the Credit Suisse First Boston defendants.

THE COURT: Yes.

MR. CLARY: Certainly in terms of all of the pretrial preparation, we have no objection to putting all that on hold.

All three of the financial institutions defendants have fully briefed pending summary judgment motions which had been made under the Court's liability standard prior to the Fifth Circuit ruling. We didn't know whether the Court would wish to have a short supplemental brief outlining the impact of the Fifth Circuit's decision on those summary judgment motions, although I think we at least believe it's fairly clear from the Fifth Circuit opinion what the impact is and those summary judgment motions should now be granted. So, if the Court would like a short supplemental brief, you know, five pages...

THE COURT: No more briefing necessary.

MR. CLARY: Okay. Thank you, Your Honor.

THE COURT: We will just continue on with what we have.

MR. CLARY: We would, therefore, ask, Your Honor, that the Court continue on the path it was already continuing in terms of going ahead and ruling on the summary judgment motion.

THE COURT: Okay. Well --

MR. BECK: Your Honor, this is David Beck for Merrill Lynch. We would echo what Mr. Clary says.

THE COURT: All right.

MR. COUGHLIN: Your Honor, this is Patrick Coughlin.

I think that in light of the influx that this issue, obviously the Fifth Circuit identified this as a conflict between the circuits and the fact that this issue is being considered by the Supreme Court. Whether to take this right now, I think it just makes sense to put everything on hold until it's clear. There is no sense in killing any more trees before this issue is decided.

Finally -- and if the Supreme Court takes it, fine; if they don't, then, of course, then it might be ripe to go ahead and rule on summary judgment motions.

MR. CLARY: Your Honor, this is Mr. Clary again.

I would be amiss not to note that Mr. Coughlin previously argued on our motion for a stay pending a ruling

by the Fifth Circuit that he predicted that we would have to go to the Supreme Court; and he argued strenuously that it would be utterly inappropriate to delay the proceedings in the district court pending the outcome on the cert petition. And obviously his views on that have changed since the Fifth Circuit ruling.

THE COURT: Well, true. But I do think we are in a slightly different position in the case at this point. So, I think that it makes sense from my perspective, at least, to put everything on hold until at least we find out whether anybody is going to bite at this apple. And that shouldn't, I don't think we will have long to wait to find out what the determination is on this. So, I am perfectly willing and think it would be the best use of everybody's time to just simply put it on hold and let's wait and see what happens in the appellate courts.

I think any situation which involves a claim under 10(b) against the banks in any case would be subject to that hold, and then we'll just see what happens either on the en banc Fifth Circuit or the Supreme Court.

Is there anything -- yes, I will take care of the jury. I will just simply let them all know that the case will not be tried as originally scheduled and that they're off the hook. And we'll just redo all this again if we have to, and this time we'll get rid of all of the typos in the

questionnaire.

And as far as the rest of the case, if there is anything we can do, we are going to be doing it; but as far as this issue is concerned, we are just going to put it all on hold and we will see what happens.

MR. COUGHLIN: We appreciate that, Your Honor.

The only housekeeping thing I think that remains are, I guess all of the parties spent some considerable time and money either serving subpoenas or getting those out. I would just ask they be continued so we don't necessarily have to redo that if we come back. If we don't, of course, you know, they will just be canceled. I would just rather not have to go through the time and expense of re-serving.

Certainly if motions have been made to get people here that were incarcerated, you know, we'll take appropriate steps to take those off calendar or move those --

THE COURT: Yes.

MR. COUGHLIN: -- like that. We will certainly look over the list, see what else we have to do to make sure people that had to rearrange their schedule or were coming now don't have to do that. I will work with Mr. Clary and Mr. Beck to do that.

THE COURT: All right. I think that is reasonable.

Anybody else have any issue they want to talk

about at this point?

MR. GREENBERG: Your Honor, this is Roger Greenberg.

The jury questionnaires that were copied and the disks, what do you want us to do with those at this point?

THE COURT: You can return them to the Court, please; and any copies that you have made, paper copies, just shred those, return them to Nancy Perez in the jury section, return the disks.

MR. GREENBERG: We may shred the paper copy?

THE COURT: You may shred the paper copies, and please do shred those paper copies.

MR. GARBOW: Your Honor, this is Avi Garbow. I represent Fiduciary Counselors, Inc., which is an independent fiduciary on behalf of many of the Enron employee stock ownership plans; and we're a putative class member.

My only question -- and it's really one for clarification -- is as to the notice, that is, out to class members. My understanding is that we have an exclusion or opt-out deadline of April 15th, and I am wondering the status about that opt-out requirement and deadline in light of what we are doing today.

MR. COUGHLIN: Well, I think that we should just keep that. We don't want to redo that. People -- all the time trials get continued after notice has gone out and

schedules change. If people are going to opt-out or do that, then they now have notice.

This is really a ruling that goes to the merits of primary versus secondary liability, so I won't try to predict what people will do or not do; but I think we just keep the schedule per the notice.

THE COURT: I tend to agree. I think that even though, I guess, technically now the Fifth Circuit rejected the class; but still, if that gets overturned, we will at least have that part done. And if eventually it's ruled that I was wrong all along and the Fifth Circuit was right, then now that just kind of goes by the board, I suppose, and then people can do what they like.

MR. COUGHLIN: So I do think there is no reason to redo or go through another expense. Of course, that would come out of the funds.

THE COURT: Right, exactly, exactly.

MR. AUGUSTUS: Your Honor, this is David Augustus. I represent the plaintiffs in the Lampkin class action against UBS defendants.

THE COURT: Yes.

MR. AUGUSTUS: I want to clarify one of the statements that was made. I understood you to say that all of the cases against or involving bank defendants would be subject to this sort of stay. And I just want to clarify

that because our case really isn't affected by the Fifth Circuit opinion. I just wanted to seek clarification.

THE COURT: What I said was any Section 10(b) claims against the banks.

MR. AUGUSTUS: Ours is a 10(b) claim, but we have allegation of a duty of disclosure.

THE COURT: Okay. All right.

MR. AUGUSTUS: A broken relationship.

THE COURT: I'm sorry. Yes, all right. That's fair.

What I am talking about is the situation addressed in this opinion by the Fifth Circuit. If your case doesn't fit that, then obviously there is, there would be no need for a stay.

MR. AUGUSTUS: Thank you, Your Honor. I just wanted to clarify.

THE COURT: Anybody else?

MS. PATRICK: Your Honor, this is Kathy Patrick for the outside directors.

Just to follow up on that, there are some tag-along cases in Ohio, for example, that don't involve class allegations and don't involve Section 10 claims at all. They do have some Section 18 and other claims. And those motions are fully briefed.

Would it be at all helpful to the Court if

someone took responsibility to try to identify for you which cases have motions pending?

THE COURT: Yes.

MS. PATRICK: Not implicated by the Section 10 ruling made by the Fifth Circuit and send you a list of those by docket number?

THE COURT: That would be extremely helpful to me. I would very much appreciate that.

MS. PATRICK: I would be happy to take on -- if people want to send me what they think that list is, I will be happy to compile it.

THE COURT: Thank you very much.

Anything else? This is the kind of thing I need to hear, if somebody volunteered to help me out.

Nobody else, huh?

Well, all right. Thank you all very much for appearing by conference call. And we will just go forward as indicated. And thank you all very much.

(Conclusion of Hearing)

CERTIFICATION

I, Fred Warner, Official Court Reporter for the United States District Court for the Southern District of Texas, Houston Division, do hereby certify that the foregoing pages 1 through 16 are a true and correct transcript of the proceedings had in the above-styled and numbered cause before the Honorable MELINDA HARMON, United States District Judge, on the 20th day of March, 2007.

WITNESS MY OFFICIAL HAND at my office in Houston, Harris County, Texas on this the 30th day of March, A.D., 2007.

Fred Warner

Fred Warner, CSR
Official Court Reporter

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re ENRON CORPORATION SECURITIES LITIGATION** | § § § § | **MDL 1446** |
| **MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated,** *Plaintiffs,* <br> vs. <br> **ENRON CORP, et al.** *Defendants.* | § § § § § § § § § § | **CIVIL ACTION NO H-01-3624** |
| **KEVIN LAMPKIN, et al, Individually and On Behalf of All Others Similarly Situated,** *Plaintiffs,* <br> VS. <br> **UBS FINANCIAL SERVICES, INC., and UBS SECURITIES LLC,** <br> *Defendants.* | § § § § § § § § § § | **CIVIL ACTION NO. H-02-0851** |

**PLAINTIFFS' NOTICE OF PENDING MOTIONS**

Plaintiffs KEVIN LAMPKIN, JANICE SCHUETTE, ROBERT FERRELL, STEVEN MILLER, DIANNE SWIBER, TERRY NELSON, JOE BROWN, and FRANKLIN GITTESS (collectively "plaintiffs") file this Notice of Pending Motions in response to the Notice to All Parties in All Pending Enron Tagalong and Coordinated Cases (Newby # 5636).

The following motions are pending in front of the Court in this matter:

1. Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint in *Lampkin v. UBS PaineWebber, Inc.* (Lampkin # 125-144), including the following related filings:

    1. Response to Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint in *Lampkin v. UBS PaineWebber, Inc.*, and, alternatively, Motion for Leave to Amend Complaint (Lampkin # 148-165);

    2. Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint in *Lampkin v. UBS PaineWebber, Inc.* (Lampkin #167-177)

    3. Response to Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint (Lampkin # 178); and

    4. Response to Plaintiffs' Unauthorized Surreply in Opposition to Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint (Lampkin # 183).

Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint has been fully briefed and is ripe for a ruling by the Court.

2. Lead Plaintiffs' Motion for Class Certification (Lampkin # 166, 184).

Lead Plaintiffs' Motion for Class Certification is not fully briefed and is not ripe for a ruling by the Court. The briefing schedule for this motion has been established by the Court (deadlines run from the date of the Fifth Circuit's ruling in *Newby*) and for yet-to-be-filed motions for summary judgment (deadline to file runs from the date of the Court's rulings on UBS's motions to dismiss). (Lampkin # 182)

April 2, 2007
Date

ANDY TINDEL
State Bar No. 20054500
Southern Dist. Bar No. 8015
PROVOST UMPHREY LAW FIRM, LLP
112 E. Line Street, Ste. 304
Tyler, TX 75702
(903) 596-0900 Telephone
(903) 595-0909 Facsimile

Bonnie Spencer
State Bar No. 06366100
Southern Dist. Bar No. 7343
David L. Augustus
State Bar No. 24036159
Southern Dist. Bar No. 33221
SPENCER & ASSOCIATES, P.C.
4635 Southwest Freeway, Ste. 900
Houston, TX 77027
(713) 961-7770 Telephone
(713) 961-5336 Facsimile

Thomas L. Hunt
State Bar No. 10289600
Southern Dist. Bar No. 1293
THOMAS L. HUNT & ASSOCIATES, P.C.
5353 West Alabama, Suite 605
Houston, TX 77056
(713) 977-3447 Telephone
(713) 490-3359 Facsimile

**ATTORNEYS FOR PLAINTIFFS KEVIN LAMPKIN, JANICE SCHUETTE, ROBERT FERRELL, and STEPHEN MILLER, Individually and on Behalf of all Others Similarly Situated**

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2007, a true and correct copy of the foregoing Notice of Pending Motions was served upon all counsel of record on the Service List by posting to *www.esl3624.com* in compliance with the Court's Order regarding Service of Papers and Notice of Hearings Via Independent Website.

David L. Augustus

# Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re ENRON CORPORATION SECURITIES LITIGATION | § § § § | MDL 1446 |
| MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated, *Plaintiffs,* | § § § § | CIVIL ACTION NO H-01-3624 |
| vs. | § § | |
| ENRON CORP, et al. *Defendants.* | § § § § | |
| SAMUEL GIANCARLO and CARLOS ALSINA, Individually and on Behalf of All Others Similarly Situated, *Plaintiffs,* | § § § § | CIVIL ACTION NO. 03-CV-4359 |
| VS. | § § | |
| UBS FINANCIAL SERVICES, INC., UBS SECURITIES LLC, and UBS AG, *Defendants.* | § § § § § | |

**PLAINTIFFS' NOTICE OF PENDING MOTIONS**

Plaintiffs SAMUEL GIANCARLO and CARLOS ALSINA (collectively "Plaintiffs") file this Notice of Pending Motions in response to Notice to All Parties in All Pending Enron Tagalong and Coordinated Cases (Newby # 5636).

The following motions are pending in front of the Court in this matter:

1. Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint in *Giancarlo v. UBS Financial Services, Inc.* (Giancarlo # 84-102), including the following related filings:

a. Response to Motion to Dismiss Plaintiffs' First Amended Class Action Complaint in *Giancarlo v. UBS Financial Services, Inc.*, and, alternatively, Motion for Leave to Amend Complaint (Giancarlo # 107-123);

b. Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint in *Giancarlo v. UBS Financial Services, Inc.* (Giancarlo #125-134).

Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint has been fully briefed and is ripe for a ruling by the Court.

2. Lead Plaintiffs' Motion for Class Certification (Giancarlo # 124).

Lead Plaintiffs' Motion for Class Certification is not fully briefed and is not ripe for a ruling by the Court. The briefing schedule for this motion has been established by the Court (deadlines run from the date of the Fifth Circuit's ruling in *Newby*) and for yet-to-be-filed motions for summary judgment (deadline to file runs from the date of the Court's rulings on UBS's motions to dismiss). (Giancarlo # 136).

DATED:

Respectfully submitted,

Dawn R. Meade /dlm

Dawn R. Meade
State Bar No. 13879750
Southern Dist. Bar No. 15180
SPENCER & ASSOCIATES, P.C.
4635 S.W. Freeway, Suite 900
Houston, TX 77027
Tel: 713-961-7770
Fax: 713-961-5336
Email: dawnmeade@spencer-law.com

**ATTORNEY FOR PLAINTIFFS, SAMUEL GIANCARLO AND CARLOS ALSINA, Individually and on Behalf of all Others Similarly Situated**

OF COUNSEL:

Bonnie Spencer
State Bar No. 06366100
Southern Dist. Bar No. 7343
Email: bonniespencer@spencer-law.com

David L. Augustus
State Bar No.
Southern Dist. Bar No.
Email: davidaugustus@spencer-law.com

Joseph J. Hroch
State Bar No.
Southern Dist. Bar. No.
Email: josephhroch@spencer-law.com

SPENCER & ASSOCIATES, P.C.
4635 Southwest Freeway, Ste. 900
Houston, TX 77027
Tel: 713-961-7770
Fax: 713-961-5336

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2007, a true and correct copy of the foregoing Notice of Pending Motions was served upon all counsel of record on the Service List by posting to *www.esl3624.com* in compliance with the Court's Order regarding Service of Papers and Notice of Hearings Via Independent Website.

David L. Augustus