FULBRIGHT & JAWORSKI L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
2200 ROSS AVENUE, SUITE 2800
DALLAS, TEXAS 75201-2784
WWW.FULBRIGHT.COM

RACKER@FULBRIGHT.COM
DIRECT DIAL: (214) 855-7466

TELEPHONE: (214) 855-8000
FACSIMILE: (214) 855-8200

April 3, 2007

By Hand and www.esl3624.com

The Honorable Melinda Harmon
United States District Court Judge
United States District Court for the Southern District of Texas
515 Rusk Avenue
Houston, Texas 77002

Re: *Lampkin* v. *UBS PaineWebber, Inc.*, Civil Action No. H-02-851
*Giancarlo* v. *UBS Financial Services Inc.*, Civil Action No. H-03-4359

Dear Judge Harmon:

I write on behalf of Defendants UBS Financial Services, Inc. ("PaineWebber"), UBS Securities LLC ("Warburg"), and UBS AG. After conferring with Plaintiffs' counsel and receiving their Joint Notice of Dispute and Motion for Determination Regarding the Court's Stay Order (*Newby* # 5635) posted to the ESL web site yesterday (the "Motion for Determination"), Defendants understand that they take the position that Your Honor's March 20, 2007 stay order does not apply to *Lampkin* and *Giancarlo*. Defendants respectfully submit that these actions should, like *Newby* and many other coordinated and consolidated cases, be stayed.

This Court ordered that "all actions in which Plaintiffs have asserted claims under § 10(b) relating to primary v. aiding and abetting liability of secondary actors . . . are STAYED" pending further review of the Fifth Circuit's decision in *Newby*. During a telephone conference on March 20, 2007, Your Honor stated that "any situation which involves a claim under 10(b) against the banks in any case would be subject to that hold, and we'll just see what happens either on the en banc Fifth Circuit or the Supreme Court." (Motion for Determination, Ex. D, at 11.)

Plaintiffs have suggested during the meet-and-confer process that Your Honor also ruled during that telephone conference that *Lampkin* (and, presumably, by extension, *Giancarlo*) are not stayed. We do not believe that to be the case. In response to Plaintiffs' assertion that they had alleged a "duty of disclosure" and a "broker relationship," Your Honor stated that "any Section 10(b) claims against the banks" that involved "the situation addressed in this opinion by the Fifth Circuit" were stayed. Your Honor further stated that "if your case doesn't fit that, . . . there would be no need for a stay." (Motion for Determination, Ex. D, at 15.) The notice that issued after this conference made clear that any disputes regarding the applicability of the stay to

particular cases would be addressed if a dispute arose between the parties. *See* Notice to All Parties in All Pending Enron Tagalong and Coordinated Cases, March 20, 2007.

*Lampkin* and *Giancarlo* assert Section 10(b) claims against three secondary actor defendants — an investment bank, a retail brokerage, and their corporate parent. As in *Newby*, Plaintiffs here allege that Defendants collectively defrauded them by "fail[ing] to disclose to Plaintiffs the material knowledge possessed by UBS concerning Enron, and by participating in financing devices and schemes to inflate the appearance of Enron's financial status." (*Lampkin* # 122, at ¶ 25; *Giancarlo* # 81, at ¶ 24.) Like *Newby*, Plaintiffs here allege violations of Rules 10b-5(a) and (c) arising from "non-representational acts" constituting a "scheme" or a "course of business which operates as a fraud." (*Lampkin* # 122, at ¶ 25; *Giancarlo* # 81, at ¶ 20.)

Defendants' pending and fully briefed motions to dismiss heavily cited this Court's opinions regarding scheme liability and an investment bank's duties to investors to show that Plaintiffs had alleged, at most, "aiding and abetting." (*See Lampkin* # 126, at 13-31; *Giancarlo* # 84, at 13-32.) Absent a stay, Defendants would supplement their briefs with the Fifth Circuit's decision. Defendants also would rely heavily on the Fifth Circuit's decision in opposing class certification. As such, were the Supreme Court to reject or affirm the Fifth Circuit's holdings in *Newby*, that ruling would have obvious implications for the *Lampkin* and *Giancarlo* cases.

Plaintiffs' opposition to this stay echoes their opposition to Defendants' motions to dismiss. Plaintiffs' response briefs asserted that the "aiding abetting distinction" was "irrelevant" because their claims arose from "UBS's unique scheme and associated material nondisclosures." (*Lampkin* # 148, at 3-4; *Giancarlo* # 108, at 3-4.) Plaintiffs sought to distinguish their claims by arguing that because UBS AG owned both the Warburg investment bank *and* the PaineWebber retail brokerage, the collective "UBS" owed Plaintiffs "duties . . . arising from their brokerage relationship with UBS and UBS's unique scheme to optimize its Enron investment bank revenues at the expense of its retail customers." (*Lampkin* # 148, at 4; *Giancarlo* # 108, at 4.) This assertion specifically — and Plaintiffs' claims generally — are flawed for numerous reasons set forth in Defendants' briefs.[1] Among other things, longstanding authority makes clear that PaineWebber owed no duty capable of sustaining fraud claims based on Warburg's alleged acts or knowledge. (*Lampkin* # 126, at 37-40; *Lampkin* # 167, at 19-25; *Giancarlo* # 84, at 40-41; *Giancarlo* # 125, at 19-25.)

Plaintiffs' legal theories have proved difficult to pin down. But what is overridingly clear is that their Section 10(b) claims, however described, are at least to some degree *impacted* by the Fifth Circuit's decision and are likely to be impacted by any Supreme Court treatment of that

---

[1] Several of the failings of Plaintiffs' claims are unaffected by the Fifth Circuit's decision and will be unaffected by any further litigation of that decision. This Court could, for example, dismiss these cases without even considering the "primary" versus "secondary" liability issue, because the complaints rely on impermissible group pleading and fail to plead the necessary elements of a Section 10(b) claim such as loss causation and scienter.

decision. Under these circumstances, the Court's stay is sensible in these cases for the same reasons it is sensible in *Newby* and the several other consolidated cases.

Plaintiffs themselves previously recognized that the Fifth Circuit appeal would likely affect *Lampkin* and *Giancarlo*. The parties acknowledged that the Fifth Circuit's decision was likely to affect this Court's decision regarding class certification in these cases and agreed that briefing on Plaintiffs' class certification motions should await the resolution of the *Newby* appeal to "avoid wasteful duplication of the parties' efforts and [to] allow the Court to review a single set of briefs based on current law." (*Lampkin* # 180; *Giancarlo* # 136.) As the parties previously anticipated, the Fifth Circuit's opinion affects not only the pending motions to dismiss, but any decisions this Court will make regarding class certification or summary judgment in these cases.[2] A stay pending the resolution of the *Newby* banks' appeal will allow for these issues to be briefed once.

We are, of course, available at Your Honor's convenience to address any concerns or questions you may have.

Respectfully submitted,

Rodney Acker

cc: All Counsel of Record
(via www.esl3624.com)

---

2 Plaintiffs suggested during the meet-and-confer call that they may seek to sever their 1933 Act claims from their 1934 Act claims if the latter are stayed —presumably so they can seek to certify their 1933 Act class. We will of course deal with any such motion if and when it is made. But we note now that the *Affiliated Ute* and *Basic* presumptions that are at the heart of the Fifth Circuit's order also are highly relevant to whether a class composed entirely of Enron employees — including every Enron employee implicated but not yet convicted in Enron's demise — may be certified.